UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Stacy A. R., | Case No. 20-CV-2593 (JFD) |
| Plaintiff, | |
| v. | **ORDER** |
| Kilolo Kijakazi,<br>Acting Commissioner of Social Security, | |
| Defendant. | |

Pursuant to 42 U.S.C. § 405(g), Plaintiff Stacy A. R. seeks judicial review of a final decision by the Commissioner of Social Security denying her application for disability insurance benefits ("DIB"). Relevant to this review, Plaintiff contends she is disabled by incontinence, osteoarthritis in her hands, and difficulty walking. The case is currently before the Court on Plaintiff's Motion for Summary Judgment (Dkt. No. 24) and Defendant's Motion for Summary Judgment (Dkt. No. 30).

Plaintiff seeks reversal of the Commissioner's final decision and remand to the Social Security Administration ("SSA") on two grounds, including that the Appeals Council ("AC") erred in determining that: (1) Plaintiff's incontinence is not severe, nor does she require an RFC that includes regular breaks for incontinence or hand stretching, and (2) Plaintiff does not require the use of a cane as a medically necessary assistive device. (Pl.'s Mem. Supp. at 1, Dkt. No. 25.)[1] For the reasons set forth below, the Court grants in

---

[1] Plaintiff also raised a third ground in her Motion for Summary Judgment—that the appointment of Andrew Saul as the former Commissioner of the SSA was constitutionally defective—thereby tainting the Commissioner's decision. (Pl.'s Mem. Supp. at 1.)

1

part Plaintiff's Motion, denies the Commissioner's Motion, and remands the case to the SSA for further proceedings.

I.   BACKGROUND

Plaintiff applied for DIB on September 11, 2018, alleging disability beginning on December 18, 2017. (Soc. Sec. Admin. R. (hereinafter "R.") 182.)[2] Her alleged impairments include major depressive disorder; osteoarthritis of the back, hands, and right knee; asthma; hypertension; Type 2 diabetes; generalized anxiety disorder, and incontinence. (R. 45, 218.)

A.   Relevant Medical Evidence

The most relevant medical evidence is from the period between the date of the alleged onset of disability (December 18, 2017) through the date of the Administrative Law Judge's ("ALJ") decision (December 9, 2019). The Court therefore focuses on evidence within that general timeframe in this Order. In addition, the Court does not summarize all of the medical evidence in the record, but only the evidence pertaining to the issues raised for judicial review.

<u>Incontinence</u>: Between October 2017 and May 2018, Plaintiff saw Jody Enter, Certified Nurse Practitioner (CNP), several times for frequent nighttime urination, painful urination, and stress incontinence. (R. 3006.) Ms. Enter directed Plaintiff to drink frequent

---

However, in her Reply, Plaintiff withdraws this argument (Pl.'s Reply at 1, Dkt. No. 32), and the Court, therefore, does not consider it.

[2] The Social Security administrative record is filed at Dkt. Nos. 21 through 21-28. The record is consecutively paginated, and the Court cites to that pagination rather than the docket number and page.

fluids. (R. 3008, 2909.) In September 2018, Plaintiff saw Victor Khayat, MB ChB (a United Kingdom equivalent to an M.D.), for urinary incontinence. (R. 2650.) Dr. Khayat diagnosed Plaintiff with incontinence and overactive bladder disorder and recommended exercises and medication. (R. 2656–57.) Two months later, Plaintiff saw Dr. Khayat again for stress incontinence when lifting heavy groceries and difficulty with post-void dribble, urinary leakage, frequent nighttime urination, and urinary urgency. (R. 968–69.) Dr. Khayat conducted a pelvic floor examination, finding weak muscles and tight hip rotators. (R. 968, 1907–09.) He documented Plaintiff's ongoing goal to decrease the frequency of incontinence by practicing stretching and strengthening exercises. (R. 970.)

Hand Pain: In January 2018, Plaintiff saw Mario Desouza, M.D., for chronic right thumb pain that worsens when Plaintiff writes, crochets, or types. (R. 582.) Dr. Desouza found joint tenderness and mildly decreased pinch strength, although no dislocation, minimal swelling, a full range of motion, normal sensation, and good grip strength. (*Id.*) An x-ray showed osteoarthritis of the right thumb joint and Dr. Desouza prescribed occupational therapy and a thumb brace (R. 583, 594–95.) Plaintiff continued occupational therapy throughout the spring of 2018 (R. 609, 635, 721), but by July 2018, Dr. Desouza documented severe thumb pain at the joint and significantly decreased pinch strength. (R. 741.) He recommended surgery. (R. 742.) In August, Plaintiff underwent a surgical resection of her right wrist, removal of a thumb bone, with pinning of the remaining bone. (R. 770, 772.) Dr. Desouza prescribed a splint and pain medication, and recommended she refrain from using her right hand to pinch or grab through the year's end. (R. 772, 789.) Plaintiff continued occupational therapy (811, 862), underwent a left thumb trigger release

(R. 859), and by mid-2019, a left ring and small finger trigger release (R. 3274). Dr. Desouza advised Plaintiff to engage in scar tissue massage (R. 895, 3274), but by August 2019, Plaintiff reported unresolved finger numbness (R. 3271).

Cane Use: In October 2017, Francille Knowles, M.D., prescribed Plaintiff a cane, but noted that "there is not a diagnosis that would be considered risky for walking distances" and advised physical therapy and increased exercise as the course of treatment. (R. 3044, 242.) In early 2018, Dr. Desouza saw Plaintiff for sharp knee pain and for instability, diagnosed osteoarthritis, and prescribed physical therapy and a brace with the possibility of future injections or surgery. (R. 582–83.) Initial assessments by physical therapist Shannon M. Barle showed that Plaintiff's knee strength, range of motion, and flexibility were generally normal, but that Plaintiff demonstrated impairments in some postures and extensions accompanied by pain. (R. 589–91.) She reported that Plaintiff was not a fall risk. (R. 589.) In spring and summer of 2018, Plaintiff continued to report mobility-limiting right knee pain (R. 2906, 680) and received a disability parking permit form (R. 730). Dr. Desouza noted that Plaintiff walked with a limp and would "likely need a total [surgical joint repair] at some point[,]" although Plaintiff wanted to delay surgery because she had applied for a job. (R. 741–42.) In late 2018, Plaintiff saw both Brian Lovig, M.D., and Dr. Desouza for worsening knee pain and increased cane use. (R. 845, 982.) Dr. Lovig found Plaintiff's pain consistent with arthritis and an x-ray showed her inner knee bones were touching, causing joint swelling. (R. 853, 898.) Dr. Desouza noted that Plaintiff used a cane "from time to time, particularly with going outdoors[,]" but that, despite having pain and a limp, "[t]here is no instability." (R. 982.) He recommended knee surgery. (*Id.*)

Plaintiff saw Ms. Enter shortly thereafter for a pre-surgical evaluation, and Ms. Enter documented that Plaintiff "use[s] a **cane** for ambulation" and cleared her for surgery. (R. 932, 940, emphasis in original.)

In February 2019, Dr. Souza performed a knee replacement surgery on Plaintiff. (R. 1031–32.) Post-surgery, Plaintiff used a cane and walker to ambulate and underwent physical and aquatic therapy. (*Id.*, 1110, 1488.) Dr. Desouza noted in April that "a sedentary job would be ideal for [Plaintiff]" and noted that Plaintiff could "ambulate about 2 blocks." (R. 2129.) By May, she arrived at a physical therapy appointment without a cane, although Plaintiff stated she still used the cane "when she goes on walks." (R. 1365.) In June, Dr. Desouza found that "[t]here us no instability" or limp when Plaintiff ambulates, she uses Tylenol for pain, and that while "[s]he takes a cane" she "mostly carries it." (R. 1286.) In October, Dr. Knowles submitted her medical opinion that Plaintiff does not "require the use of a cane . . . to 'ambulate effectively[,]'" but noted that Plaintiff "uses [a] cane when icy in winter" and can walk for two blocks without it. (R. 3288–89.)

### B. Administrative Proceedings

Plaintiff's DIB application was denied on initial review and reconsideration. (R. 69, 85.) At Plaintiff's request, an ALJ held a hearing on November 20, 2019. (R. 14.) At the hearing, Plaintiff testified that the arthritis in her hands makes it hard for her to grasp heavier objects, and that after her hand surgery, it is more difficult to do tasks like crocheting and she "take[s] more breaks, because my fingers get sore from the motion." (R. 22–23.) Plaintiff stated that when she had to type at past jobs, her fingers would get sore, but that performing hand exercises "about every half hour" helped ease the pain. (*Id.*)

5

Regarding back pain, Plaintiff testified the constant pain made household chores such as folding laundry or cooking—which require her to stand for longer periods or to bend over—more difficult. (R. 25, 28–29.) She testified that she needs to take a break to sit after about a half hour of standing, and that she takes her cane with her on walks "just in case if I start to get tired" although she "can usually go at least two blocks, before I start getting any pain or you know, I'm needing to use my cane for assistance." (R. 25–26.)

As to knee pain, Plaintiff stated that she "can't kneel on [her knee], jump run[,] . . . [or] squat[,]" and uses a cane "in winter[.]" (R. 27–28.) She testified that she can grocery shop alone sometimes and runs errands (R. 29, 33), but that she sits in her reclining chair for about "60% of the day" (R. 34). She testified that she uses various pain medications, including Gabapentin and Amitriptyline. (R. 34–35.)

Concerning incontinence, Plaintiff testified that she's "on more of the low end" and "[i]t's a toss-up" whether she needs frequent breaks to use the restroom or not on any given day. (R. 45–46, 48.) She recounted being "talked to a couple of times" in past jobs "because [she] was leaving [her] work station" to use the restroom and go for a short walk. (R. 45–46.) She characterized each break as taking "[t]wo, three minutes maybe," and stated that for at least the past five years she has needed to take one to two breaks per hour of work, including to change her incontinence pads twice daily. (R. 47–49.)

Plaintiff testified regarding employment that she had been "looking more for a sit down job or a job where there's more leniency on the sitting and the standing" involving "typing" and "filing paperwork," and meanwhile, had been regularly babysitting a four-year-old and a two-year-old for a neighbor. (R. 31, 43.) She stated that, while typing was

6

painful, her financial circumstances required that she work and she was thus prepared to "live with pain." (R. 43.) At the time of the hearing, she had not been successful in obtaining employment, despite several interviews. (R. 43–44.)

Vocational expert and counselor Kristen Dare testified at the hearing regarding Plaintiff's ability to perform her prior work. Ms. Dare first gave an overview of Plaintiff's past work as a department manager, a food-industry sales clerk, a stock clerk, a short order cook, a fast food worker, and a customer service representative. (R. 38–39.) Ms. Dare concluded that Plaintiff had transferrable skills and could work in other jobs including as a customer service representative, counter supervisor, or food assembler, but that if she could perform only sedentary work, only customer service representative roles remained. (R. 40–41.) For such roles, Ms. Dare testified that an individual could not be absent more than once per month, would typically be allowed two 15-minute breaks plus one lunch break, and would need to be "on task 85% or more of the workday." (R. 41–42.)

When asked whether a hypothetical person of Plaintiff's age, education, and work experience could perform jobs that require the ability to stand and walk for two hours; sit for six hours; take typical breaks; handle objects; and finger objects no smaller than a pen, Ms. Dare stated that such an "individual would be able to perform the job of customer service representative." (R. 50.) When asked if that same individual could still perform that job if they required "at least one unscheduled break, every hour, for two to three minutes," Ms. Dare stated that all "[p]ast work would be eliminated." (R. 51.) Finally, when asked if the same individual could not do any manipulation or fingering of objects, Ms. Dare stated that such limitations would also eliminate all jobs. (R. 51–52.)

7

The ALJ issued a written decision on December 9, 2019, determining that Plaintiff was disabled. (R. 87.)[3] On February 6, 2020, the Appeals Council ("AC"), comprised of two Administrative Appeals Judges, notified Plaintiff that they had decided to modify the decision in her case and find that Plaintiff was not disabled because the ALJ's decision "[was] not supported by substantial evidence and reflects an error of law." (R. 172–73.) The AC stated they intended to adopt the findings of the ALJ "at steps 1 through 3[,]" but to amend Plaintiff's RFC between step three and four to remove the "unscheduled breaks of 3 minutes every hour, on average, with unpredictable intervals[,]" which would change the subsequent findings at steps four and five and would result in a finding that Plaintiff was not disabled. (R. 177.) Before the AC issued their decision, the AC permitted Plaintiff to send them additional information. (*Id.*) Plaintiff submitted a statement, but no additional medical evidence. (R. 5.)

On October 29, 2020, the AC issued their decision and determined that Plaintiff was not disabled because she "was more capable during the relevant period" than previously found and was "capable of performing her past relevant work" under 20 C.F.R. § 404.1520(a)(4)(iv) and (f) and § 404.1560(b)(3). (R. 2, 5.) Pursuant to the five-step sequential analysis outlined in 20 C.F.R. § 404.1520(a), the AC first determined that Plaintiff had not engaged in substantial gainful activity since the date of the alleged onset of her disability. (R. 9.) At step two, the AC found that Plaintiff had severe impairments of

---

[3] The Court will not discuss the ALJ's decision at length because the Appeals Council's decision superseded it and is the controlling decision of the Commissioner for the purposes of judicial review. *See* 20 C.F.R. §§ 404.987–88.

"osteoarthritis affecting the back, hands, and knees, status-post total right knee replacement and multiple, bilateral hand surgeries; asthma; diabetes; hypertension; obesity; depression; and anxiety[.]" (*Id.*) Notably, although the AC stated in their notice that they intended to adopt the ALJ's findings "at steps 1 through 3" (R. 177), the AC omitted "mixed urinary incontinence" from Plaintiff's severe impairments at step two. (*Compare* R. 9 *with* R. 90.)

At step three, the AC concluded that none of Plaintiff's impairments, alone or in combination, met or medically equaled the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

Before proceeding to step four, the AC assessed Plaintiff's RFC.[4] Relevant to the issues raised on judicial review, the AC found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence in the record. (R. 10.) In particular, the AC did "not find that the record supports the need for unscheduled, additional bathroom breaks and to stretch the hands for 3 minutes every hour, on average, at unpredictable intervals." (*Id.*)

The AC next considered the persuasiveness of medical opinion evidence. (R. 9–10.) The AC found the state agency medical consultants' opinions unpersuasive because the record shows that Plaintiff was more limited in her ability to lift, carry, stand, and walk than the consultants indicated. (R. 10.) The AC found Dr. Knowles's opinion partially persuasive because, like the opinions of Dr. Desouza and the state agency medical consultants, Dr. Knowles concluded that Plaintiff is capable of sedentary work. (*Id.*) The

---

[4] RFC, or residual functional capacity, "is the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

9

AC also found that the medical opinions generally showed that Plaintiff had "at least frequent abilities to handle and finger[,]" and that her providers expected her right hand limitations to improve over time. (*Id.*)

Based on the record, the AC concluded that Plaintiff had the RFC

> [t]o perform sedentary work as defined in 20 CFR 404.1567(a), except she could occasionally operate foot controls, stoop, kneel, crouch, and climb ramps and stairs. She could never crawl or climb ladders, ropes, or scaffolds. She could frequently balance. She could frequently handle and finger with both hands and arms. She was to avoid concentrated exposure to use of moving machinery, unprotected heights, chemicals, poorly-ventilated areas, and environmental irritants such as fumes, odors, dusts, and gases. She could understand, remember, and carry out detailed but not complex tasks. She could relate on a superficial and ongoing basis with coworkers and supervisors.

(R. 9.) Based on this RFC, the AC then proceeded to step four of the sequential evaluation and determined that Plaintiff could perform her past "customer service representative/order clerk" work. (R. 10–11.) Consequently, at step five, the AC found that Plaintiff was not disabled. (*Id.*) This constituted "the final decision of the Commissioner of Social Security in [Plaintiff's] case" for the purposes of judicial review. (R. 2.)

### C.   Judicial Review

Plaintiff seeks reversal of the Commissioner's final decision and remand for further administrative proceedings. (Pl.'s Mem. Supp. at 30.) Plaintiff argues that the AC erred in determining that: (1) Plaintiff's incontinence is not severe, nor does she require an RFC requiring regular breaks for incontinence or hand stretching, and (2) Plaintiff does not require the use of a cane as a medically necessary assistive device. (*Id.* at 1.) The

Commissioner opposes Plaintiff's Motion and asks that the final decision be affirmed. (Def.'s Mem. Supp. at 29, Dkt. No. 31.)

## II.   STANDARD OF REVIEW

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence in the record as a whole supports the decision, 42 U.S.C. § 405(g), or whether the Commissioner's decision resulted from an error of law, *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id*. (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse the Commissioner's decision simply because substantial evidence would support a different outcome or the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence and one of those positions is that of the Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

It is a claimant's burden to prove disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability for DIB, the claimant must establish that they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The disability, not just the impairment, must last for at least twelve months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

### III. DISCUSSION

#### A. Incontinence and Breaks for Incontinence and Hand Stretching

Plaintiff first argues that the Commissioner erred in evaluating the severity of her incontinence. (Pl.'s Mem. Supp. at 8–12.) Plaintiff bears the burden to demonstrate both that medical evidence shows her incontinence was an abnormality, 20 C.F.R. § 404.1521, and that this abnormality impacted her ability to perform basic work activities such as walking, sitting, and reaching. Social Security Ruling (SSR) 85-28, 1985 WL 56856, at *3 (S.S.A. Jan. 1, 1985); 20 C.F.R. § 404.1522(b). Here, Plaintiff points to evidence in the record to which she argues the AC should have given more weight, including her subjective testimony. However, the Court may not reweigh the evidence. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154–56 (2019). The AC found that the medical evidence presented about her bladder-related concerns did not support the need for "unscheduled breaks of 3 minute every hour" where no medical professional ever documented such a concern. (R. 6–7.) The AC found it significant that the state agency medical consultants found no bladder-related severe impairment or need for breaks. (R. 8.) Moreover, the AC observed that Plaintiff agreed with Dr. Desouza that she could work in a sedentary job despite her bladder concerns. (R. 10.) The AC also opined that Plaintiff engaged in activities during the relevant period that were inconsistent with requiring frequent breaks, including engaging in childcare and seeking employment (R. 7.) Where subjective complaints conflict with a

plaintiff's activities, the Commissioner may find such complaints unpersuasive. *See Vance v. Berryhill,* 860 F.3d 114, 1121 (8th Cir. 2017).

Plaintiff also contends that the Commissioner erred in evaluating her need for frequent breaks due to hand soreness. (Pl.'s Mem. Supp. at 12–17.) The AC reviewed the medical record and found that, although Plaintiff regularly complained of hand pain, neither the state agency medical consultants nor Dr. Knowles found she required manipulative limitations. (R. 8.) The AC also opined that Dr. Desouza predicted Plaintiff's right hand after surgery would neither require permanent restrictions nor interfere with sedentary work. (*Id.*) Additionally, the AC noted that Plaintiff regularly engaged in activities such as typing, housework, and making crafts, which conflicted with her claims of debilitating hand pain requiring frequent breaks. (R. 7–8.)

On this record, the Court cannot find that the Commissioner erred in determining that Plaintiff did not require frequent breaks for incontinence or hand soreness in her RFC. Plaintiff may disagree with the Commissioner's conclusions, but where the Court finds substantial evidence supporting those conclusions—even where there is substantial evidence supporting an opposite conclusion—the Court may not. *See Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015); *Biestek*, 139 S. Ct. 1154–56 (2019). Therefore, the Court finds that substantial evidence supports the Commissioner's findings between step three and four as to incontinence, hand soreness, and breaks.

  **B.**  **Use of a Cane**

Plaintiff next argues that the Commissioner erred between steps three and four in failing to consider her need for a cane. (Pl.'s Mem. Supp. at 17–28.) "To find that a hand-

held assistive device is medically required, there must be medical documentation establishing the need for a . . . device to aid in walking or standing, and describing the circumstances for which it is needed." SSR 96-9p, 1996 WL 374185, at *7 (S.S.A. July 2, 1996). The Court cited to pertinent facts in the record about Plaintiff's cane use in Section I.A and need not recount them again here. Plaintiff contends that the fact that the AC failed to incorporate Plaintiff's cane-use in the RFC—and failed to mention the assistive device *at all* when discussing Plaintiff's limitations in standing and walking—is an error. (Pl.'s Mem. Supp. at 26–28.)

While the Commissioner need not "discuss every piece of evidence submitted[,]" *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998), she "must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [their] limitations." *Hensley v. Colvin*, 829 F.3d 926, 931–32 (8th Cir. 2016) (quoting *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013). The AC has leeway to find opinions unpersuasive or evidence inconsistent with a limitation, but they must "show their work" and explain why. *Smajic v. Berryhill*, No. 4:17-CV-2474 (SNLJ), 2019 WL 183980, at *4 (E.D. Mo. Jan. 14, 2019). When considering medical opinions, the key factors used to explain their (un)persuasiveness are "supportability" and "consistency." 20 C.F.R. § 404.1520c.

As set forth at length in Section I.A, Dr. Knowles prescribed Plaintiff with a cane in October 2017, and various providers documented its varying levels of use. (*See, e.g.,* R. 932, 940, 982, 1365, 3044, 3288–89.) The AC stated they found Dr. Knowles's medical opinion partially persuasive in that she "indicate[d] the claimant could sit more often than

stand/walk" which was "consistent with Dr. De[s]ouza's opinion that the claimant was capable of sedentary work . . . ." (R. 10.) It is unclear whether the AC found Dr. Knowles's prescription for a cane unpersuasive evidence. The AC also found Dr. Desouza's medical opinion partially persuasive (*id.*), but it is equally unclear if Plaintiff's prescription for, and use of, a cane was an unpersuasive part of records and opinions provided by Dr. Desouza.

Based on this record which shows that during the relevant period Plaintiff had been prescribed—and sometimes used—a cane, the Court finds the Commissioner's silence on this assistive device in her decision is an error. "An ALJ must consider limitations resulting from a claimant's use of a cane only if the cane is 'medically necessary' or 'medically required.'" *Mya Y. v. Saul*, No. 20-CV-1296 (JRT/LIB), 2021 WL 3023691, at *4 (D. Minn. June 28, 2021) (citing SSR 96-9p, 1996 WL 374185, at *7; *Richmond v. Berryhill*, 16-CV-140 (LRR), 2017 WL 4074633, at * 3 (N.D. Iowa Sept. 14, 2017)), *R. & R. adopted*, 2021 WL 3022723 (D. Minn. July 16, 2021). To find that a cane is medically necessary or required, "'there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing,' and medical documentation 'describing the circumstances for which it is needed . . . .'" *Id.* (citing SSR 96-9p, 1996 WL 374185, at *7). "A prescription (or the lack of a prescription) for an assistive device is not necessarily dispositive of the presence or absence of medical necessity, *see, e.g., Staples v. Astrue*, 329 F. App'x 189, 191–92 (10th Cir. 2009), but it is important to the ALJ's analysis, *see, e.g., Toland v. Colvin*, 761 F.3d 931, 936 (8th Cir. 2014)." *Patricia M. v. Saul*, No. 18-CV-3462 (DSD/HB), 2020 WL 3633218, at *7 (D. Minn. Feb. 5, 2020), *R. & R. adopted sub nom. McArdell v. Saul*, 2020 WL 1951748 (D. Minn. Apr. 23, 2020) (emphasis added). If the

15

Commissioner found a cane was not medically necessary for Plaintiff, or not medically necessary for Plaintiff's sedentary work limitation—as the RFC's silence suggests but which is nowhere articulated—the Commissioner needed to explain why the record supported this finding. 20 C.F.R. § 404.1520c(b)(2).

Defendant argues belatedly that the record supports a finding that Plaintiff did not require a cane to perform her past sedentary work. (Def.'s Mem. Supp. at 14–16.) There may indeed be evidence in the record to support the AC's decision that Plaintiff did not require the use of an assistive device corresponding to her silent RFC on the subject, but that is not a question for the Court to answer; that question is for the Commissioner to determine based on the record. *See, e.g., Goodman v. Kijakazi*, No. 4:20-CV-0457 (SRC), 2021 WL 4476693, at *5 (E.D. Mo. Sept. 29, 2021) (noting that the ALJ *expressly* found a cane was not medically necessary or required); *Mya Y.*, 2021 WL 3023691, at *4 (same); *Danny V. v. Kijakazi*, No. 20-CV-2014 (LIB), 2022 WL 1715190, at *6 (D. Minn. Mar. 31, 2022) (same).

Because the Commissioner has not addressed Plaintiff's prescription for a cane as an assistive device, nor explained why she accepts or rejects the evidence regarding whether Plaintiff requires the use of that device, and under what circumstances, the Court cannot meaningfully review the Commissioner's decision to exclude cane use from Plaintiff's RFC and analyze whether substantial evidence supports the AC's conclusions formulated under the correctly applied legal standards. A Court may not substitute its own judgment for that of the Commissioner, and the Court declines to do so here. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (citing *England v. Astrue*, 490 F.3d 1017, 1019

(8th Cir. 2007)). Therefore, remand is appropriate to determine whether Plaintiff's RFC requires a limitation for the use of a cane as a medically necessary or required assistive device, under what circumstances, and—if the answer is even a qualified yes—whether that changes the findings and decision of the Commissioner at subsequent steps in her evaluation.

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment (Dkt. No. 24) is **GRANTED** in part and **DENIED** in part;

2. Defendant's Motion for Summary Judgment (Dkt. No. 30) is **DENIED**; and

3. The decision of the Commissioner of Social Security is **REVERSED** and the case **REMANDED** to the Commissioner according to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings to determine between steps three and four whether the evidence in the record persuasively demonstrates that Plaintiff requires the use of a cane as a medically necessary or medically required assistive device, and if so, whether the subsequent steps in the Commissioner's evaluation require amendment accordingly.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date: July 8, 2022

*s/ John F. Docherty*
JOHN F. DOCHERTY
United States Magistrate Judge